**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

MARLYN HAYNES, individually and as                                          PLAINTIFF
Administratrix for the
ESTATE OF JAMES ARTHUR HAYNES

v.                                    No. 4:10CV00529 JLH

WHITE COUNTY, ARKANSAS;
RICKY SHOURD, in his official capacity;
ANGELINA SMITH; MATTHEW MOSLEY;
ROSETTA SIMMONS; JEFF LANGLEY;
and ROGER HOWARD, individually and in
their official capacities                                                   DEFENDANTS

## OPINION AND ORDER

Marlyn Haynes brings this action against White County, Arkansas, its sheriff, and a number

of deputy sheriffs, pursuant to 42 U.S.C. § 1983 (2006), alleging that her deceased husband's

constitutional rights were violated by the defendants' deliberate indifference to his serious medical

needs.  She asserts standing pursuant to Ark. Code Ann. § 16-62-101 *et seq*. (Repl. 2005).  The

defendants have moved for summary judgment and the plaintiff has responded.  For the following

reasons, the defendants' motion for summary judgment will be granted.

## I.

On May 10, 2007, James Arthur Haynes was booked into the White County jail as a pretrial

detainee.  The jail's medical reports indicate that Vanessa Wire, the medical coordinator, noted that

Haynes had a history of hypertension and was taking Atenolol to control his blood pressure.  Over

the next few days, Haynes had multiple high blood pressure readings.  His medication card indicated

that he should be taking Lisinopril, among other things.  On May 30, 2007, Haynes filed a grievance

contending that he was being denied needed medical treatment.  That grievance was received by

Angelia Smith who forwarded it to Wire.  Wire visited Haynes and called the jail physician,

Dr. Larry Killough Sr.  The jail's medical notes indicate that Haynes continued to have high blood pressure and reported coughing up blood.  On June 4, 2007, Haynes suffered from a heart attack and, despite efforts on the part of jail staff to resuscitate him, was pronounced dead after being transported to the local hospital.  On May 27, 2010, the plaintiff commenced this action.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008).  A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

The defendants contend that the claims against White County and against the defendants in their official capacities are barred by the statute of limitations. It is well settled that the "limitation period in an action under 42 U.S.C. § 1983 (1988) is the state statute of limitations for personal injury actions." *Morton v. City of Little Rock*, 934 F.2d 180, 182-83 (8th Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)). "The Arkansas statute of limitations period for personal injury suits is three years." *Williams v. Bradshaw*, 459 F.3d 846, 847 (8th Cir. 2006) (citing Ark. Code Ann. § 16-56-105(3)). The defendants contend, however, that in this instance the two-year limitations period provided in Ark. Code Ann. § 16-56-109 should govern. That statute applies to "[a]ll actions against sheriffs . . . upon an liability incurred by them by doing any act in their official capacity, or by the omission of any official duty except for escapes[.]" Judge Eisele has thoroughly considered and rejected this argument as inconsistent with Supreme Court and Eighth Circuit precedent and contrary to the federal principles underlying section 1983. *Allen v. Hall*, No. 3:05CV00282, 2007 WL 5393666 (E.D. Ark. Feb. 28, 2007) (citing *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985) ("all section 1983 claims that accrue after *Wilson* [are to] be governed by the state's personal injury statute of limitations")); *see also Gaona v. Town & Country Credit*, 324 F.3d 1050, 1055 (8th Cir. 2003) (identifying "the federal interest in uniformity" in the section 1983 context). Because the Court has determined that the defendants are entitled to summary judgment on other grounds, as discussed below, the Court need not decide which statute of limitations period applies. The Court assumes, *arguendo*, that the three-year limitations period from section 16-56-105(3) applies to Haynes' section 1983 claims against the County and the official capacity defendants. *Cf. Williams*, 459 F.3d at 847 (applying the three-year limitations

period to a section 1983 suit brought by a plaintiff whose mother died while in police custody).[1]

## IV.

The defendants argue that they are entitled to qualified immunity on the section 1983 claims brought against them in their individual capacities.  "Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Bernini v. City of St. Paul*, --- F.3d ----, 2012 WL 96461, *3 (8th Cir. Jan. 13, 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  Therefore, the jail officials are entitled to qualified immunity "unless (1) the evidence, viewed in the light most favorable to the plaintiff[], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

"It is well established that '[d]eliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment.' " *Langford v. Norris*, 614 F.3d 445, 459-60 (8th Cir. 2010) (citations omitted).  " 'To show deliberate indifference, [a plaintiff] must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it.' "  *Id.* (citations omitted).

Haynes undoubtedly suffered from objectively serious medical needs, but there is no evidence tending to establish that Matthew Mosley, Rosetta Simmons, Jeff Langley, or Roger

---

[1] The defendants also seek summary judgment on any claims for conduct which occurred more than three-years before the complaint was filed on May 27, 2010.  It does not appear that the complaint asserts any claims based on conduct occurring prior to May 27, 2007.

Howard was aware of Haynes's medical needs prior to June 4, 2007.  All of these defendants testified that they were not involved in the medical treatment of Haynes, Haynes never told them about any medical problems, and they did not become aware of any such problems prior to June 4, 2007.  Documents #19-2, 19-3, 19-4, 19-6.  No evidence in the record contradicts this testimony.  It is undisputed that these individual defendants promptly responded when they learned that Haynes was lying down and suffering from breathing problems and nausea, shortly before 11:00 a.m. on June 4, 2007.  They went to Haynes's cell, found him conscious and coherent, attempted to assess his medical problems, and brought him to the jail's exam room.  Someone called an ambulance at approximately 11:23 a.m. and cardiopulmonary resuscitation was performed once Haynes became unresponsive.  Based on these uncontroverted facts, no reasonable jury could conclude that Mosley, Simmons, Langley, or Howard acted with deliberate indifference to Haynes's serious medical needs upon learning of them.  *See Langford*, 614 F.3d at 460 ("To state a claim based on 'inadequate medical treatment . . . [t]he plaintiff 'must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.' ' ") (citations omitted).  Therefore, summary judgment will be granted in favor of Mosley, Simmons, Langley, and Howard in their individual capacities.

The only other individual capacity defendant is Smith, who is a lieutenant at the White County jail.  Smith received a grievance from Haynes on May 30, 2007.  The grievance stated,

> On 5-28-07 I asked for some medical help because I was coughing up blood, could not breath, and just in alot of physical pain and at the time Cpl. Jones came to talk to me and I told him that I needed some medical help and Jones told me that he new [sic] nothing about medical so at that time I believe that Jones should of found somebody medically fit or took me to the ER like I ask with him depriving me of my medical it has left me in much pain and I belive [sic] I need to talk with some body about the problem.  [T]hank you for your time in this matter.

Document #25-1.  Smith wrote in the "Response" section of the form, "[f]orward this to Medical

Coordinator Vanessa Wire to contact the doctor."

Smith testified by affidavit that prior to June 4, 2007, she "had no involvement in the medical care or treatment of James Haynes, with the exception of receiving and routing one medical request from James Haynes to Vanessa Wire, the jail's medical liaison, for the purpose of calling the jail doctor to the jail to see Mr. Haynes."  Document #19-5.  Smith testified that she was responsible for answering grievances but that medical requests were routed to Wire.  She stated that she probably received Haynes's form because someone had scribbled out the title "request/complaint" and inserted the word "grievance."  No evidence in the record contradicts any of this testimony.

Smith also testified that shortly after she routed Haynes's medical request to Wire, Dr. Killough came to the jail to examine Haynes.  Clayton Edwards, the jail administrator and custodian of jail records, testified by affidavit that he is familiar with the handwriting of Dr. Killough and Wire.  Document #19-1.  He further testified that the progress notes for Haynes, which he attached to his affidavit, contain entries on May 28, 2007, and May 31, 2007, in Dr. Killough's handwriting.  Finally, Edwards testified that the medical progress notes do not leave the jail.  The testimony of Smith and Edwards establishes that Dr. Killough came to the jail, saw Haynes, and made handwritten treatment notes regarding Haynes while at the jail.

The records of the White County jail also contain undated prescription requests for Lisinopril[2] and Atenolol,[3] apparently in Wire's handwriting.  In addition, the records include

---

[2] According to the document in the record, Lisinopril is used to treat high blood pressure and may be used to treat congestive heart failure.

[3] According to the document in the record, Atenolol is a beta blocker used to treat high blood pressure and angina pectoris.

prescriptions for Erythromycin[4] and GFN-DM[5] with the signature of Dr. Killough.  The prescriptions for Erythromycin and GFN-DM were filled at Walgreens on May 28, 2007.  The prescription for Lisinopril was filled at Stanley Pharmacy on May 29, 2007.  The jail records include documents from the pharmacies reciting that Dr. Killough ordered the prescriptions to be filled.  The records of the jail also include a document from Stanley Pharmacy indicating that a prescription for Atenolol was filled on May 29, 2007, though the patient's name and the doctor ordering the prescription are not included on that document.

As noted above, on May 30, 2007, Haynes filed a grievance complaining that on May 28 "Jones should of found somebody medically fit or took me to the ER[.]"  That grievance implies but does not explicitly state that Dr. Killough did not come to the jail to examine and treat Haynes on May 28.  In addition, Mrs. Haynes says that she found another grievance, which apparently was never filed, in Haynes's bible after he died.  That document, which is dated June 1, 2007, states,

> yes I put a Emergency Medical grievance in on 5-30-07 and I know it has been over 48 hours so way [sic] have I not heard anything back on the matter yet I believe the staff are being incompetent not doing there jobs I have been sick for days still fill real bad and I believe my civil rights are being neglected [illegible] as it can be told I would like to talk to some one very soon.

Document #25-1.  Like the filed grievances, this unfiled grievance implies but does not explicitly state that Dr. Killough did not come to the jail to treat Haynes.  Based on these statements by Haynes, the plaintiff contends that there is a genuine dispute as to whether Dr. Killough came to the jail to treat Haynes.

---

[4] According to the document in the record, Erythromycin is an antibiotic used to treat bacterial infections and may be used with rheumatic heart disease.

[5] According to the document in the record, GFN-DM is a cough suppressant and expectorant combination used to treat cough due to colds, flu, hayfever, or other conditions as determined by a doctor.

The issue is whether these unsworn statements are inadmissible hearsay.  *See Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001) ("[W]e do not stretch this favorable presumption [at the summary judgment stage] so far as to consider as evidence statements found only in inadmissible hearsay.").  The filed grievance by implication contradicts the testimony that Dr. Killough came to the jail to see Haynes when it says, "Jones should of found somebody medically fit[.]"  The unfiled grievance by implication contradicts the testimony that Dr. Killough came to the jail when it says, "it has been over 48 hours so why have I not heard anything back on the matter yet," and "I believe my civil rights are being neglected."  These statements in the grievances are offered for the truth of what they imply, which is, that Dr. Killough did not see Haynes at the jail.  Consequently, these statements are inadmissable hearsay unless they fall within an exception to the exclusion of hearsay.  *See* Fed. R. Evid. 801, 802.  Because the statements are not statements of a party opponent, Rule 801(d)(2) does not apply.  Nor does Rule 803(4) apply because the statements were not made for purposes of medical diagnosis or treatment.  Rule 804(b)(2) does not apply because neither grievance indicates that Haynes believed that his death was imminent.  Finally, these statements are not admissible under Rule 807, the residual exception to the hearsay rule, which permits a hearsay statement to be received in evidence if the statement has circumstantial guarantees of trustworthiness equivalent to Rule 803 or 804.  Statements by a prisoner in a grievance have no such guarantees of trustworthiness.  Moreover, to be admitted pursuant to Rule 807, the statement must be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts."  Fed. R. Evid. 807.  Although Haynes obviously is unavailable to testify, the plaintiff could through reasonable efforts obtain testimony on the issue of whether Dr. Killough came to the jail from other inmates or from Dr. Killough himself.  Because they are hearsay and do not fall within any exception to the rule excluding hearsay from evidence, these

statements in Haynes's grievances cannot be considered to prove that Dr. Killough did not see Haynes at the jail. Thus, no admissible evidence in the record contradicts the testimony of Smith and Edwards that Dr. Killough came to the jail to treat Haynes.

The uncontroverted evidence establishes that Smith's duties did not include responding to medical requests and that she had nothing to do with Haynes's medical care. The uncontroverted evidence also establishes that Smith promptly forwarded the medical request that she received from Haynes to the medical coordinator, Vanessa Wire. Wire contacted Dr. Killough, who came to the jail to diagnose and treat Haynes. No reasonable jury could find that Smith was deliberately indifferent to the decedent's serious physical needs. *See Langford*, 614 F.3d at 460.

Even if a genuine dispute existed as to whether Dr. Killough came to the jail, Smith still would be entitled to summary judgment because the undisputed evidence establishes that Smith promptly sent Haynes's medical request to the jail official who had the duty to handle medical issues and, if needed, call a physician. Haynes offers nothing to show that Smith could have or should have done more than she did. Summary judgment will be granted in favor of Smith in her individual capacity.

## V.

The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Brockinton*, 503 F.3d at 674 (quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (collecting cases)); *see also Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 395-96 (8th Cir. 2007) (en banc) (abrogating Part II.C of *Kuha v. City of Minnetonka*, 365 F.3d 590, 603 (8th Cir. 2003) (holding, *inter alia*, that a city may still be liable for an unconstitutional custom or policy giving rise to a constitutional deprivation even if the officers perpetrating the violation are entitled

to qualified immunity based on a good faith belief)).  Further, "[a] suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself."  *Id.* (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)).  Because, as a matter of law, none of the defendants is individually liable for any underlying substantive claim, the County and official capacity defendants cannot be held liable under section 1983.

Throughout her briefs, the plaintiff appears to contend that Corporal Jones, to whom the decedent referred in his initial grievance, Edwards, and Wire were deliberately indifferent to Haynes's serious medical needs.  None of these individuals is a defendant in this action.[6]

The coroner found no evidence that Haynes had been taking Atenolol or Lisinopril.  The jail records show that Haynes's medications, including Atenolol and Lisinopril, were regularly dispensed and that Haynes initialed to show that he received them.  According to policy, a jailer should have watched Haynes take his medications when they were dispensed.  If the medications were not dispensed, Edwards or Wire would be responsible for that omission because they were responsible for ensuring that medications were dispensed, according to White County's Detainee Health Care policy.  Most of the medications were dispensed by jailer number 1064, which apparently was Wire's number.  *See* Document #19-1, p. 28.  The records show that Mosley was number 172, Howard was number 1055, and Simmons was number 196.  None of those numbers appear in the records identifying the jailers who dispensed medicine to Haynes.  No numbers for Langley or Smith appear in the court records.  Thus, no evidence has been presented to show that any individual defendant had any participation in dispensing medication or any responsibility to do so.  Wire had that duty, and Edwards may have had an obligation also, but neither is a party.

_____

[6] The complaint named Jones and Wire as defendants, but neither was served.  Both were dismissed without prejudice on March 2, 2011.

Assuming, *arguendo*, that a tort committed by employees who are not defendants could result in liability on the part of the County, the County is still entitled to summary judgment.  To hold the County liable under section 1983, the plaintiff would have to show that the action that is alleged to be unconstitutional implements or executes an official policy of the County or that the action was taken pursuant to a custom or practice that is so widespread as to have the force of law. *Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir. 1984).  The undisputed facts establish that White County had written policies regarding the medical treatment of prisoners.  The plaintiff does not contend that these policies were inadequate, nor do they appear inadequate to the Court.

The plaintiff does contend that the jail did not have a sufficient number of medically trained staff.  Two reports from the Arkansas Detention Facilities Review Committee indicate that the White County jail was understaffed and that a number of the jailers had not taken the "basic Jailer's course."  Document #26-1.  These reports also state, however, that the jail met the State of Arkansas standards regarding medical, dental, and mental health care.  Consequently, these reports do not establish that the jail did not have a sufficient number of medically-trained staff.  Although Haynes's grievance states that Corporal Jones said that he lacked medical training, it is undisputed that the grievance was forwarded to Wire who examined Haynes and contacted Dr. Killough.  The plaintiff has not alleged and offers no evidence to show that Wire was not medically trained.  Furthermore, as discussed above, the admissible evidence establishes that Dr. Killough examined Haynes at the jail on May 28, 2007, and May 31, 2007.

So far as the record in this action shows, the only incident of alleged deliberate indifference to serious medical needs at the White County jail is the single incident involving Haynes.  A single incident is insufficient to establish a pattern of persistent and widespread practices that have become so permanent and well settled as to have the effect and force of law.  *Szabla*, 486 F.3d at 392-93

("So far as the record reveals, this was a one-time incident, and there is no evidence of a pattern of constitutional violations making it 'obvious' that additional training or safeguards were necessary. We agree with the district court that this 'isolated incident' cannot support a claim that the City acted with deliberate indifference by inadequately training its officers on the use of canines.") (citations omitted); *Brockinton*, 503 F.3d at 674 ("A governmental custom involves 'a pattern of 'persistent and widespread' . . . practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law.' ") (quoting *Doe v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)).

The defendants are entitled to summary judgment on the section 1983 claims against White County and the other defendants in their official capacities.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. Document #17.  The complaint is dismissed with prejudice.  Because the Court has granted the defendants' summary judgment motion, the defendants' motion in limine is DENIED as moot. Document #31.

IT IS SO ORDERED this 13th day of February, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT COURT